The **OHIO CASUALTY INSURANCE COMPANY, Plaintiff,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA; and Celina Mutual Insurance Company, Defendants.**

Civ. No. 84–0371.

United States District Court,
M.D. Pennsylvania.

April 11, 1985.

Zygmund Zialkowski, Jr., Scranton, Pa., for plaintiff.

Timothy E. Foley, Scranton, Pa., for defendants.

**MEMORANDUM AND ORDER**

CONABOY, District Judge.

Plaintiff Ohio Casualty Insurance Company (hereinafter Ohio) initiated this action pursuant to 42 Pa.C.S.A. § 7531 et seq. in the Court of Common Pleas for Luzerne County. Ohio sought a declaratory judgment that Defendants Prudential Insurance Company of America and Celina Mutual Insurance Company (hereinafter Prudential and Celina) are obligated, under terms of

---

4. *Barker,* supra, 407 U.S. at 533, 92 S.Ct. at 2193.

automobile insurance policies issued to Joseph Capone, Sr., to contribute to a settlement Ohio reached unilaterally with Kenneth Capone. Prudential and Celina exercised their right to remove this diversity action to federal court. We now consider whether Prudential and Celina are obligated to help fund Ohio's settlement with Kenneth Capone and, if so, to what extent.

This action was precipitated by an automobile accident which occurred on March 8, 1982. In that accident Kenneth Capone, a son of Joseph Capone, Sr., was injured while riding in a vehicle owned by Thomas Zupko, Sr. and driven by Thomas Zupko, Jr. Kenneth Capone, the son of Joseph Capone, Sr. and his former wife, sustained serious injuries in this accident. Since Plaintiff Ohio insured the Zupko vehicle, it arranged to make payments to Kenneth Capone pending the outcome of this action. Plaintiff now urges that we construe certain provisions of the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 Pa. S. §§ 1009.101 *et seq.*, so as to justify a declaration that Prudential and Celina should provide contribution or indemnification regarding its settlement with Kenneth Capone.

■ Ohio seizes on the fact that Prudential insures a vehicle owned by Joseph Capone, Sr. and Celina Insures the vehicles owned by Del-Cap Detective Agency, a concern of which Joseph Capone, Sr. is an officer and employee, to begin a controversy about who should be the primary insurer in this situation. Ohio points out that 40 Pa.S. § 1009.204 states, in pertinent part, "The security for the payment of basic loss benefits applicable to an injury to: ... (2) an insured is the security under which the victim or deceased victim is insured ..." Ohio then goes on to state: "Whether Kenneth Capone falls within category 2 (that cited above) depends on the definition of the term 'insured', as set forth in the aforesaid policies [1] as defined in 40 Pa.S. § 1009.103 of the Act ...[2] That definition reads:

"Insured" means:

(A) an individual identified by name as an insured in a contract of basic loss insurance complying with this act; and

(B) a spouse or other relative of a named insured, a minor in the custody of a named insured, and a minor in the custody of a relative of a named insured if—

(i.) not identified by name as an insured in any other contract of basic restoration insurance complying with this act; and

(ii.) in residence in the same household with a named insured.

An individual is in residence in the same household if he usually makes his home in the same family unit, even though he temporarily lives elsewhere.

Thus, if we are to find that Prudential and/or Celina are obligated to Ohio, we must find also that Kenneth Capone was a member of the same household as Joseph Capone, Sr.

The undisputed fact is that Kenneth Capone resides with his mother, who was divorced from his father in 1978, and brothers at 118½ Lackawanna Avenue in Dupont, Pennsylvania. Similarly undisputed is the fact that Joseph Capone, Sr. lives at 75 Searle Street in Pittston, Pennsylvania. It is agreed, too, that these living arrangements were in existence for some years before the accident in question occurred. Ohio urges that, because Joseph Capone, Sr. pays support for his three sons and finances the cost of the home in which his sons and former wife live, Kenneth Capone may properly be considered a member of his household. Ohio relates that there is a dearth of case law in the Commonwealth of Pennsylvania on the issue of what constitutes a household. This is true. Ohio cites *Hoff v. Hoff*, 132 Pa.Super. 431, 1 A.2d 506 (1938) for the proposition that:

Neither relationship nor the presence of all parties within one dwelling is the determining factor (as to whether a house-

---

**1.** Those of Joseph Capone and Del-Cap with Prudential and Celina respectively.

**2.** See Ohio's trial brief at page 4.

hold exists), but rather the existence of such domestic arrangements and circumstances as would create separate domestic establishments, each having its own head and separate management. *Hoff,* supra, at 435–36, 1 A.2d 506.

Unfortunately, Ohio seems to ignore that the *Hoff* Court held that two groups who were living under the same roof actually constituted separate households due to the relative autonomy of each group and in spite of the fact that all were related. In our case Mrs. Capone has functioned as the custodial parent at least since the divorce in 1978. She has had the primary responsibility of caring for and rearing her sons in a dwelling place separate from that of her ex-husband. We do not see that the level of the non-custodial parent's financial support, generous as it may be, can create a situation where but one household exists subsequent to a divorce. Moreover, Ohio cites no Pennsylvania case which stands for that principle.

Defendants, however, do cite Pennsylvania cases which support their more literal definition of household. One of these, *Teetsel v. Nationwide Mutual Insurance Company,* 37 Pa. D & C 2d 246 (1965), construes household as "... a domestic establishment, synonymous with the word 'family'; or a body of persons living in *one* house under *one* head." (emphasis ours).[3] A similar conclusion was reached in *Drake v. Donegal Mutual Insurance Company,* 422 F.Supp. 272 (1976). Perhaps the most persuasive of the precedents alluded to by the Defendants is a recent (1984) case decided in the Lackawanna County court of Common Pleas, *King v. Allstate Insurance Company,* 85 Lackawanna Jurist 39. Therein Judge Walsh focused on the wording of the statute in deciding a case very similar to the one before us in that it concerned how far insurance coverages extended in a family torn by divorce. Honoring the time honored maxim that words in statutes are to be given their ordinary meanings in the absence of notice to the contrary, Judge Walsh relied upon what he

decided was a clear expression of legislative intent. He wrote, "The drafters of the law apparently envisioned the case presently before this Court where there is family separation. For the law states that a spouse or other relative of a named insured, a minor in the custody of a named insured, and a minor in the custody of a relative of a named insured, to meet the definition of 'insured' must also be in residence in the same household with a named insured ..." The finding was then made that a non-custodial parent who had provided financial support to a deceased child who had lived in a separate dwelling place with his mother was not a member of the same household as the deceased child.

This, then, is a situation in which all the Pennsylvania decisional law, scant though it may be, is supportive of the limited construction of "household" advocated by the Defendants. Moreover, if we give, as we must, effect to the plain meaning of the statute, we are compelled to hold that Joseph Capone, Sr. was no longer a member of the same household as his former wife and sons at the time of Kenneth's misfortune. We simply cannot give greater weight to the precedent of other jurisdictions than to the Pennsylvania cases cited by Defendants. As a federal court sitting in diversity we must interpret the law of the state in which we sit, not rewrite it.

■ Another issue in this case is whether, as urged by Defendants, Plaintiff's argument is so specious and lacking in substance as to make it appropriate to require that Plaintiff pay Defendants' counsel fees. The recently revised (August 1, 1983) Rule 11 of the Federal Rules of Civil Procedure provides authority for this Court to order such a sanction. Rule 11 provides, *inter alia,* that:

> The signature of an attorney or party constitutes a certification by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, or belief formed after reasonable inquiry it is well grounded in

---

3. See Prudential's trial brief at page 6.

fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, *and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation ...* (emphasis ours).

While we do agree that Plaintiff's argument—particularly as to Defendant Celina—is not one we would characterize as a likely winner, we do not find that it is clear that it was interposed for one of the improper purposes which must have existed before we would order the extraordinary remedy of having one party pay the legal fees of another. We note, too, the concept of no-fault insurance is relatively new and many questions which it raises have not been answered often enough and consistently enough to be regarded as settled law. We think in short, that Plaintiff's conduct in instituting this lawsuit was neither so egregious nor so clearly motivated by an improper purpose that we can properly force Ohio to pay the legal fees of its opponents here. An appropriate Order follows.